NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER JOE RIVERA, : | |
| : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : | |
| : | **OPINION** |
| v.        : | |
| : | Civil Action No. 02-CV-2798 (DMC) |
| G. ROGERS, A.L. SANTIAGO,   : | |
| C. BUCHANAN, G. BANKOWSKI, and : | |
| L. CHIPPETTA,        : | |
| | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

    This matter comes before the Court upon a motion by G. Rogers, A. Santiago, C. Buchanan, G. Bankowski and L. Chippetta (collectively "Defendants"), for summary judgment pursuant to Fed. R. Civ. P. 56 to dismiss the remaining count of Peter Joe Rivera's ("Plaintiff") Complaint. Plaintiff has not submitted any opposition to Defendants' motion. Pursuant to Fed. R. Civ. P. 78, the Court did not hear oral argument and after careful consideration of Defendants' submissions, Defendants' motion for summary judgment is **granted** and this case is **dismissed**.

**I. BACKGROUND**

    On March 31, 1992, a jury found Plaintiff guilty on Indictment # 90-09-0710-I of two counts of sexual assault of a nine-year-old in the second degree; two counts of aggravated criminal sexual contact in the first degree; one count of endangering the welfare of a child; and one count of lewdness. (Defendants' Brief in Support of Their Motion for Summary Judgment

("Def. Br.") at 5).  As a result, he was sentenced to a ten year prison term.  (Id.)  On the same date, Plaintiff was also found guilty on Indictment # 90-01-0030-I of both charges and sentenced to a four year prison term to run consecutively with the ten year term.  (Id.)  Before he completed his term of incarceration, Plaintiff was involuntarily civilly committed to the Special Treatment Unit ("STU") in Kearny, New Jersey.  (Id.)  He was committed to STU pursuant to the Sexually Violent Predator Act ("SVPA"), which requires persons deemed sexually violent predators to be involuntarily civilly committed.  N.J.S.A. 30:4-27.34(a).

Shortly after he arrived at STU, Plaintiff was given the Resident Handbook, which outlines the rules and procedures enforced at the facility.  (Def. Br. at 6).  In the Handbook it states: "[f]or security purposes, the designated DOC Mail Officer will open all packages in the mail room."  (Id. Exhibit A, at 7).  It further states that STU's staff must review any and all tapes that enter STU.  (Id.)

Plaintiff alleges he received a memorandum dated March 25, 2002, from STU's mail room supervisor informing him that the mail room had received a package addressed to him from his girlfriend, which contained three tapes and one letter written in Spanish.  (Id. at 7).  The supervisor further stated that the contents of the package were prohibited contraband and as a result the package was being stored in the mail room pending disposal.  (Id.)  Plaintiff then chose to have the package returned to his girlfriend, rather than having it destroyed.  (Id. at 8).  The reason provided by STU for its return was its sexually explicit content, which is listed as prohibited in STU's Handbook.  (Id.)  Plaintiff then directed his girlfriend to send the letter through his attorney as legal mail so that he could obtain the letter.  (Id.)  Anything marked as "legal mail" is not viewed or checked by STU's staff.

In response to STU refusing to provide Plaintiff with the letter, he filed this pro se action in Federal Court pursuant to 28 U.S.C. § 1983, alleging loss of personal property, denial of access to the courts, exposure to environmental tobacco smoke, and interference with his personal mail against Defendants. On December 9, 2002, this Court dismissed the following claims from Plaintiff's Complaint: (1) loss of property; (2) denial of access to the courts; and (3) exposure to environmental tobacco smoke. This Court also denied Plaintiff's request for injunctive relief. Plaintiff appealed to the Third Circuit and on June 30, 2003, this Court dismissed Plaintiff's appeal for lack of appellate jurisdiction and the matter was returned to this Court. Defendants have now filed a motion for summary judgment to dismiss Plaintiff's remaining claim of unconstitutional interference.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy

this burden, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

## B. Constitutional Restriction Analysis

Plaintiff argues STU's policy of opening all packages in the mail room unless clearly marked "legal mail" violates his First Amendment rights. In Youngberg v. Romeo, 457 U.S. 307 (1982), the Supreme Court of the United States held that the Fourteenth Amendment of the United States Constitution determines the rights of individuals who have been involuntary committed to a facility. Id. at 312. Although patients at state institutions do have constitutionally protected interests, these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307. The Constitution is not concerned with de minimus restrictions on patients' liberties. Id. at 320.

The Supreme Court expanded on the Youngberg decision in Turner v. Safley, 482 U.S. 78 (1987). In Safley, the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. Id. at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id. The Court instructed lower courts to weigh the following four factors to determine the reasonableness of a prison regulation: (1) whether the prison policy has a "valid, rational connection to the legitimate governmental interest put forward to justify it;" (2) whether prisoners have an alternative means to exercise the constitutional right at issue; (3) the cost to prison staff, inmates, and resources incurred in accommodating the right; and (4) whether there

are ready alternatives to the regulation.  Id. at 89-91.

In Waterman v. Farmer, 183 F.3d 208 (3d Cir. 1999), the Third Circuit found that the Safely test applies whenever a prisoner's First Amendment rights are regulated.  The Third Circuit recognized "that it is beyond dispute that New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders."  Id. at 215, citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  The Court went on to discuss the Safely factors while placing great emphasis on the importance of the first factor.  The Court noted that the first factor "looms especially large" because it "encompasses the remaining factors and some of its criteria are apparently necessary conditions."  Id. at 214, quoting Amatel v. Reno, 156 F.3d 192,196 (D.C. Cir. 1998).   In line with this reasoning, the Third Circuit held that prison authorities do not have to prove that their regulations serve relevant security interests.  Id. at 217.  Instead, prison officials must only show that the regulation at issue is rationally related to the interests they are seeking to protect.  Id.   Like the Supreme Court, the Third Circuit recognized that prison officials have a substantial interest in upholding the security of their facilities and protecting the safety of both the prisoners and staff.  Fraise v. Terhune, 283 F.3d 506, 516 (3d Cir. 2002); DeHart v. Horn, 227 F.3d 47, 52-53 (3d Cir. 2000).

### C. Plaintiff's Constitutional Rights under Safely Analysis

Plaintiff argues that STU's policy of opening all packages mailed to prisoners, except those marked "legal mail," violates his First Amendment rights.  Under the Safely test, this Court must first determine whether STU's mail policy has a "valid, rational connection to the legitimate governmental interest put forward to justify it."

First, it is beyond dispute that STU has a legitimate interest in both the safety of its facility and rehabilitating its patients. STU houses some of New Jersey's most dangerous sexual predators, which makes safety at the facility a very important concern. (Def. Br. at 15). The staff must determine if any items coming through the mail pose a threat to the safety of the staff or the patients. They also must decide if any of the materials passing through the mail could be detrimental to a patient's therapy. Due to the close-quartered environment at STU, the residents and the staff share equal risks of harm if a patient were to open a package containing contraband in his room. Also, a letter containing sexually explicit material could prove detrimental to a patient's rehabilitation. As set forth by the Supreme Court and the Third Circuit, the Court must defer to the prison officials when it comes to issue of managing a safe and operational prison facility. Opening up letters and packages that arrive at the facility to assure that harmful materials are not being passed through the mail, clearly bears a rational relationship to both interests discussed above. Due to the fact that a rational relationship exists between STU's mail policy and the penological interest, the Court moves on to the next factor.

The second factor requires the Court to examine whether the residents have alternative means to exercise their constitutional right. Here, Plaintiff argues his constitutional right to free speech is being violated. The Court disagrees. Prisoners may still receive and send mail to whomever they wish, so long as a resident is not receiving contraband, pornographic material or sexually explicit correspondence. Patients at state institutions do have constitutionally protected interests but they are not absolute or protected to the same degree as free citizens. These rights may be restricted in certain situations after being balanced against the reasons put forth by the

-6-

State for restricting their liberties.  Youngberg. at 307.  Although Plaintiff's mail access has been restricted, he still enjoys free speech.  This factor again illustrates the reasonableness of STU's mail policy.

The third factor requires the Court to examine the cost incurred in accommodating the constitutional right and the fourth factor looks to whether there are any ready alternatives to the solution.  Here, if contraband successfully passes through the mail to a patient, the safety of everyone at the facility could be at risk.  Also, if sexually explicit material passes through the mail, the patient's treatment could be negatively impacted.   There does not appear a more cost affective or less restrictive mean to accomplish the goals of safety and successful treatment other than the policy STU currently has in place.  Even if the mail could go through a scanning device for contraband, that would not eliminate the risk of having a patient's recovery process impeded by the receipt of a sexually explicit letter or pornographic material.  STU's current policy appears to be the only viable alternative at this point.  These factors again point to the reasonableness of STU's policy.

All of the Safely factors point to the reasonableness of STU's mail policy.  STU's policy is related to a legitimate penological interest.  Furthermore, prison officials must only show that the regulation at issue is rationally related to the  interests they are seeking to protect.  Waterman, 183 F.3d at 217. Here the interests put forth by Defendants are clearly rationally related to the interests they are seeking to protect.  Defendants' successfully have shown that their interests are reasonable under the Safely factors.  Therefore, this Court finds that the mail policy does not violate Plaintiff's First Amendment right to free speech.  Because Defendants did not violate any

of Plaintiff's constitutional rights, there is not reason to proceed any further in the analysis of whether Defendants may claim immunity as a defense.

### III. CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' motion is granted and Plaintiff's Complaint is **dismissed**.  An appropriate Order accompanies this Opinion.


    S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       May 22, 2006
Original:   Clerk's Office
Cc:         All Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
                File